UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re COMMUNITY MEMORIAL
HOSPITAL,

        Debtor.

Bankruptcy Case No. 12-20666
Adv. Proc. No. 14-2082
HON. DANIEL S. OPPERMAN

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURG, PA,

        Appellant / Defendant,

v.

CMH LIQUIDATING TRUST,

        Appellee / Plaintiff.
_____/

Case No. 14-CV-14149

HON. MARK A. GOLDSMITH

**OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO WITHDRAW REFERENCE (Dkts. 1, 5)
WITHOUT PREJUDICE**

**I. INTRODUCTION**

This matter is presently before the Court on Defendant's motion to withdraw the reference (Dkts. 1, 5). The issues have been fully briefed and a hearing was held on January 22, 2015. For the reasons explained fully below, Court denies Defendant's motion without prejudice.

**II. BACKGROUND**

The factual background is not in dispute. See Pl. Resp. at 2 (Dkt. 6). On March 1, 2012, Debtor Community Memorial Hospital ("CMH")[1] filed a voluntary petition for relief under

---

[1] CMH "was a Michigan non-profit hospital that opened its doors in 1942 and operated a short-term acute-care and long-term care facility, along with physician clinics, offering in-patient and

1

chapter 11 of the bankruptcy code. Def. Br. at 11 (cm/ecf page) (Dkt. 5). On August 7, 2013, the bankruptcy court entered an order confirming the corrected first amended chapter 11 plan of liquidation of the official committee of unsecured creditors. Id. Pursuant to that order, certain assets of CMH were vested in Plaintiff CMH Liquidating Trust ("Trust"), including all causes of action previously held by CMH against its former directors and officers. Id.

After filing its bankruptcy petition, CMH purchased a directors and officers liability insurance policy ("D&O Policy") from Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"). Id. The D&O Policy was effective from March 11, 2012 to March 11, 2013, and it provided three types of coverage: (i) Type A coverage protected directors and officers from liability, provided they were not indemnified by CMH; (ii) Type B coverage protected CMH to the extent that it was duty-bound to reimburse or indemnify the directors and officers; and (iii) Type C coverage protected CMH in the event that it was sued directly for the wrongful acts of its directors and officers. Id.

Notably, under endorsement #10 to the D&O Policy, coverage was subject to a "bankruptcy/insolvency/creditors" exclusion, which provided that

> [National Union] shall not be liable to make any payment for Loss in connection with any Claim made against any Insured:
>
> (1) alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:
>
>    (i)      any Wrongful Act which is alleged to have led to or caused, directly or indirectly, wholly or in part, the bankruptcy or insolvency of the Organization, or to the Organization filing a petition, or a petition being filed against the Organization, pursuant to the federal Bankruptcy Code or any similar state law, or the

---

out-patient healthcare services, primarily to residents of Michigan's Lower Peninsula." Def. Br. at 10 (cm/ecf page) (Dkt. 5).

>>Organization assigning its assets for the benefits of its creditors; or

>(ii) the Organization having sustained a financial loss due, directly or indirectly, wholly or in part, to a Wrongful Act of the Insured(s), but only if such Claim is made after the Organization has been determined to be insolvent, or has filed a petition for bankruptcy, or a petition has been filed against it, or the Organization has assigned its assets for the benefit of its creditors; or

> (2) brought by or on the behalf of any creditor or debt-holder of the Organization, or arising out of any liability (whether alleged or actual) to pay or collect accounts, including but not limited to Claims alleging misrepresentation in connection with the extension of credit or purchase of a debt instrument, or Claims alleging any deterioration in the value of the debt as a result of (wholly or in part) the bankruptcy or insolvency of the Organization.

See Endorsement #10 of Policy, Ex. B to Def. Br. at 28 (cm/ecf page).[2]

On February 27, 2014, the Trust filed suit against CMH's former directors and officers, alleging that they had breached their fiduciary duties, causing CMH to suffer more than $16 million in operating losses. Def. Br. at 12 (cm/ecf page). After being provided notice, National Union denied coverage for the matter pursuant to the "bankruptcy/insolvency/creditors" exclusion. Id. The Trust then filed an adversary proceeding seeking declaratory relief and breach-of-contract damages against National Union, claiming that the exclusion is unenforceable as a matter of bankruptcy law. Id.; Pl. Resp. at 2 (claiming that "the ipso facto exclusion National Union relies upon is unenforceable as a matter of bankruptcy law," because "several provisions in the Bankruptcy Code . . . void ipso facto clauses" as a matter of public policy").

---

[2] Plaintiff claims that this type of insurance policy provision "is commonly referred to as an ipso facto clause, which is a provision that 'result in the loss of property rights or the elimination or limitation of obligations that existed prior to the commencement of a bankruptcy which loss, elimination or limitation occurs by reason of the debtor's bankruptcy [or insolvency]." Pl. Resp. at 1 (quoting Black's Law Dictionary at 834 (7th ed. 1999)).

On October 28, 2014, National Union filed the present motion seeking to withdraw the reference to the bankruptcy court.

### III.  STANDARD OF DECISION

Under 28 U.S.C. § 1334, a federal district court has original jurisdiction over bankruptcy cases and "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  However, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Under this District's Local Rule 83.50, all bankruptcy-related proceedings filed in the Eastern District of Michigan are automatically referred to the bankruptcy court for this District.  See E.D. Mich. LR 83.50.

Once a case is referred, 28 U.S.C. § 157(b)(1) "vests full judicial power in bankruptcy courts over 'core proceedings arising under title 11, or arising in a case under title 11.'" Mich. Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.), 930 F.2d 1132, 1144 (6th Cir. 1991) (quoting Wood v. Wood (In re Wood), 825 F.2d 90, 96 (5th Cir. 1987)) (emphasis omitted).  Nevertheless, section 157(d) provides that the Court must "withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Id.  Although withdrawal is not mandatory in this case, as the adversary proceeding does not involve the consideration of other federal laws, the Court may decide to "withdraw, in whole or in part, any case or proceeding" that was referred under section 157 "for cause shown." 28 U.S.C. § 157(d) (emphasis added).  National Union argues that this case qualifies for permissive withdrawal.

4

Section 157(d) does not define "for cause shown" for the purpose of withdrawing a reference to a bankruptcy court. See Mathson Indus., Inc. v. Negri Bossi USA, Inc. (In re Mathson Indus., Inc.), 408 B.R. 888, 891 (E.D. Mich. 2009). Rather, district courts consider the following factors when determining whether there is sufficient "cause" to withdraw a reference:

> (1) whether the claim is core or non-core, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors.

Id. (quoting S. St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.), 94 F.3d 755, 762 (2d Cir. 1996)); see also Skyline Concrete Floor Corp. v. Winter & Associates, P.L.C. (In re Skyline Concrete Floor Corp.), 410 B.R. 564, 566-567 (E.D. Mich. 2008) (same).

### IV. ANALYSIS

**A. This Court has authority to make the initial determination of whether an adversary proceeding is core or non-core.**

As a threshold matter, the Trust argues that, because the bankruptcy court has not made a determination of whether this adversary proceeding is core or non-core, the motion should be denied without prejudice, and the matter be referred back to the bankruptcy court for that initial determination. Pl. Resp. at 3-4. According to the Trust, district courts routinely deny motions to withdraw reference without prejudice to allow the bankruptcy court to make the initial core/non-core determination. Id.

In its reply, National Union argues that the cases the Trust relies on are not appropriate because, in those cases, the district courts deferred to the bankruptcy court "only because the posture of the case demanded it." Def. Reply at 2. National Union states that this Court should not defer to the bankruptcy court because this Court does not lack the complete record, this motion represents National Union's first responsive pleading, and the complaint was attached to

5

the motion. Id. at 2-3.

There is some support for the Trust's position. Relying on section 157(b)(3), the Sixth Circuit has stated that the "bankruptcy judge rules on whether a particular proceedings is a core proceeding." Sanders Confectionery Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474, 483 (6th Cir. 1992) (citing 28 U.S.C. § 157(b)(3)). Similarly, the bankruptcy court for the Western District of Michigan has recognized that it "is charged with the responsibility of determining whether a matter falls within the somewhat uncertain meaning of a 'core proceeding.' . . . Likewise, the Bankruptcy Court must also initially determine whether a cause of action may be a noncore related proceeding or a noncore nonrelated proceeding." Spence v. Pontack (In re Tvorik), 83 B.R. 450, 454 (Bankr. W.D. Mich. 1988) (quoting 28 U.S.C. § 157(b)(3)) (emphasis added); Transamerica Auto. Fin. Corp. v. Artibee (In re Pal Nissan, Inc.), 126 B.R. 966, 971 (Bankr. W.D. Mich. 1991) ("Therefore, absent consent by all Defendants, and notwithstanding that the substantive issues raised may be affected or governed by state law, it is this court's duty to initially determine whether the adversary proceeding is a core proceeding, a noncore related proceeding, or a noncore, nonrelated proceeding." (citing 28 U.S.C. § 157(b)(3)) (emphasis added)).

Other district courts within this circuit have reached a similar conclusion. See, e.g., Helbling v. Josselson, No. 1:07MC002, 2007 WL 1112570, at *1 (N.D. Ohio Apr. 10, 2007) (denying the defendants' motion to withdraw the reference because "the bankruptcy court must make the initial determination" of "whether the claims asserted by the Trustee are core or non-core"); Sicherman v. Crosby (In re Rivera), No. 1:05MC065, 2005 WL 4001273, at *4 (N.D. Ohio Oct. 12, 2005) (denying the motion to withdraw the reference because "the question of whether an adversary proceeding is a core proceeding should initially be decided by the

bankruptcy court"); Kirk v. Hendon (In re Heinsohn), 231 B.R. 48, 56 (Bankr. E.D. Tenn. 1999) ("Interestingly, the bankruptcy judge rules on whether a particular proceeding is a core proceeding under § 157(a) or is otherwise related to a case under title 11." (citing Sanders, 973 F.2d at 483)).

Some district courts, on the other hand, have reached the opposite conclusion. For instance, while recognizing that "[s]ome courts have construed the language of § 157(b)(3) as establishing a preference for the initial determination of the core/non-core issue to be made by the bankruptcy court," the district court for the Southern District of New York found "no reason to require the bankruptcy judge to make an initial determination based on facts which [were] presently before [it]. To rule otherwise would result in further delay occasioned by an added layer of judicial decision making." Keene Corp. v. Williams Bailey & Wesner, L.L.P. (In re Keene Corp.), 182 B.R. 379, 383 (S.D.N.Y. 1995). The Court agrees with this later approach.

As National Union indicated during oral argument, it would appeal a decision made by the bankruptcy court should that court determine that the adversary proceeding is a core proceeding. Because a bankruptcy court's determination of whether an adversary proceeding is core or non-core is a question of law subject to de novo review, see Hughes–Bechtol, Inc. v. Construction Mgmt., Inc., 144 B.R. 755, 756 (S.D. Ohio 1992), this Court would merely be adding another unnecessary layer of judicial decision making that would delay the proceedings in this case. And all the facts that the bankruptcy court would need to rule on this matter are of record at this time before this Court. Therefore, the Court concludes that it can and should make the initial determination of whether this adversary proceeding is core or non-core.

**B. Core/Non-Core Determination**

The first factor the Court should consider for permissive withdrawal — whether the claim

is core or non-core — is considered by some courts to be "the most important" in deciding a withdrawal-of-the-reference motion. See In re Skyline, 410 B.R. at 567; CNH Am., LLC v. Venture Indus. Corp. (In re NM Holdings Co., L.L.C.), 344 B.R. 526 (E.D. Mich. 2006) ("Courts have held the most important factor is whether or not the proceeding is a core proceeding."). Although the bankruptcy code permits bankruptcy judges authority to issue final judgments and orders in core proceedings, bankruptcy judges may only submit proposed findings of fact and conclusions of law in non-core proceedings, which are then subject to the objections of the parties and de novo review by the district court. 28 U.S.C. §§ 157(b)(1), (c)(1); see also Boyd v. King Par, LLC, No. 1:11-CV-1106, 2011 WL 5509873, at *1 (W.D. Mich. Nov. 10, 2011).

According to the Sixth Circuit, core proceedings are those that "involve a cause of action created or determined by a statutory provision of title 11" or "by their very nature, could arise only in bankruptcy cases." In re Wolverine, 930 F.2d at 1144. On the other hand, "if the proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of the bankruptcy, then it is not a core proceeding." Id.

The Trust argues that this adversary proceeding is a core proceeding "because the Bankruptcy Code prohibits [] ipso facto provisions, [and] the issues surrounding the enforceability of the D&O Policy invoke a substantive right created by federal bankruptcy law." Pl. Resp. at 2. According to the Trust, both 11 U.S.C. § 365(e)[3] and 11 U.S.C. § 541(c)[4] "create

---

[3] 11 U.S.C. § 365(e)(1) provides that

> [n]otwithstanding a provision in an executory contract . . ., or in applicable law, an executory contract . . . of the debtor may not be terminated or modified, and any right or obligation under such contract . . . may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract . . . that is conditioned on—

8

a substantive right to void the ipso facto clause in Endorsement #10 relied upon by National Union." Pl. Resp. at 7.

National Union argues that this adversary proceeding does not fall within the bankruptcy court's core jurisdiction because none of the core matters enumerated in section 157(b)'s non-exhaustive list is implicated. Def. Br. at 13 (cm/ecf page). National Union also argues that the adversary proceeding does not invoke a substantive right created by federal bankruptcy law, and this proceeding is one that could exist outside of bankruptcy. Id. at 13-14 (cm/ecf pages). According to National Union, the Trust's declaratory relief action and breach of contract claim could exist outside of, and independent to, Title 11, as it "is a plain vanilla, state law insurance coverage dispute." Def. Reply at 4. National Union's argues that a defense based on bankruptcy law does not convert the purely state-court action into a core matter. Id. The Court agrees with National Union.

---

> (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
>
> (B) the commencement of a case under this title; or
>
> (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

[4] 11 U.S.C. § 541(c)(1)(B) provides that

> an interest of the debtor in property becomes property of the estate . . . notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
>
> (B) that is conditioned on the insolvency of financial condition of the debtor, on the commencement of a case under this title...and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

9

"Under the 'well-pleaded' complaint rule, a defendant may not avail itself of federal jurisdiction by asserting a defense that arises under federal law." Kmart Creditor Trust v. Conway (In re Kmart Corp.), 307 B.R. 586, 595 (Bankr. E.D. Mich. 2004) (citing Robinson v. Mich. Consol. Co., 918 F.2d 579, 584 (6th Cir. 1990)) (stating that a defendant "cannot avoid mandatory abstention and remand under 28 U.S.C. 1334(c)(2) by simply raising a defense that might require a state court to interpret an order of the Bankruptcy Court").[5] In In re Kmart, the bankruptcy court held that the defendant could "not convert what is otherwise a purely state court cause of action into a core matter" on the theory that it "may have some defenses based on interpretation of the [bankruptcy] Plan, other bankruptcy court documents, or non-court documents." Id.

In the present case, the Trust's adversary proceeding is essentially a state-law breach-of-contract matter, for which National Union's anticipated defense is the existence of the ipso facto clause, and the Trust's defense to that defense is that bankruptcy law prohibits the enforcement of such clauses. Like the defendant in In re Kmart, the Court concludes that the Trust cannot convert its state-law breach-of-contract claim into a core matter simply because it may have a

---

[5] The Court is cognizant that there is a lack of consensus on whether the well-pleaded complaint rule applies in determining jurisdiction under 28 U.S.C. § 1334. Compare Conseco, Inc. v. Adams (In re Conseco, Inc.), 318 B.R. 425, 431 n.1 (Bankr. N.D. Ill. 2004) (concluding "that the well-pleaded complaint rule should be applied in determining 'related to' as well as 'arising under' and 'arising in' jurisdiction under 28 U.S.C. § 1334"); Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., LLC, 357 F. Supp. 2d 529, 535 (E.D.N.Y. 2004) ("It is well-established that the well-pleaded complaint rule applies both to federal question jurisdiction under 28 U.S.C. § 1331, and to bankruptcy jurisdiction under 28 U.S.C. § 1334."), with Meritage Homes Corp. v. JPMorgan Chase Bank, N.A., 474 B.R. 526, 562 n.37 (Bankr. S.D. Ohio 2012) ("[T]he well-pleaded complaint rule for determining federal jurisdiction does not apply in the context of related-to jurisdiction."); Foster Poultry Farms, Inc. v. Int'l Bus. Machines Corp., No. CIV-F-06-0680 AWI SMS, 2006 WL 2769944, at *8 (E.D. Cali. Aug. 1, 2006) (holding that the well-pleaded complaint rule does not apply to cases brought to federal court under bankruptcy jurisdiction, because section 1334(b) covers "a broader field than the 'arising under' jurisdictional statutes").

defense to a defense that is premised on the application of the bankruptcy code.  Therefore, the Court finds that the adversary proceeding is a non-core proceeding.

Although this adversary proceeding is non-core, certain judges in this District have a standard policy of permitting the bankruptcy judge to retain authority over all pretrial proceedings, and will only withdraw the reference if and when the matter reaches trial.  See, e.g., United Solar Ovonic, LLC v. Ontility LLC (In re Energy Conversion Devices), No. 12-12653, 2012 WL 5383165, at *2 (E.D. Mich. Oct. 26, 2012) ("[T]he standard practice of this Court, and of others in this District, is to permit the Bankruptcy Judge to manage the pre-trial phase of the litigation, with this Court revisiting the matter of withdrawal if and when the case is ready for trial." (brackets and quotation marks omitted)); Official Comm. of Unsecured ex rel. Estate of Greektown Holdings, LLC v. Papas, Nos. 10-cv-12628, 10-cv-12742, 10-cv-12774, 2010 WL 4807067, at *2 (E.D. Mich. Nov. 18, 2010) ("Generally, the Courts of this District have denied withdrawing the reference until the case is ready for trial.") (collecting cases).  To the extent those courts have a firm practice of denying motions to withdraw until the matter is ready for trial, the Court declines to adopt a similar policy.  Given the varying issues that may arise in an adversary proceeding, the Court believes that a flexible analysis is the more prudent approach.  See In re Dzierzawski, Nos. 14-14615, 14-14734, 6/22/2015 Op. & Order at 6 (E.D. Mich.) (Goldsmith, J.).  Accordingly, the Court turns to the remaining factors to determine which court is best suited to handle the pretrial stage of this adversary proceeding.

The Court notes that this adversary proceeding is in its infancy.  Discovery has not been completed, and, in fact, may not have even begun.  Furthermore, bankruptcy proceedings beyond, but nevertheless related to, the adversary proceeding will be on-going, yielding the likely possibility of judicial efficiency if all matters remain before one judge. Parties and

11

witnesses will be less inconvenienced, inconsistent rulings can be avoided, and litigation costs reduced. And no prejudice has been identified or substantiated if the proceeding remains before the bankruptcy court for the pretrial litigation stage.

Accordingly, Court denies Defendant's motion to withdraw the reference without prejudice. Should the matter proceed toward trial, the Court will entertain a renewed motion to withdraw at that juncture.

### IV. CONCLUSION

For the reasons stated above, the Court denies Defendant's motion to withdraw the reference to the bankruptcy court (Dkts. 1, 5) without prejudice.

SO ORDERED.


Dated: June 22, 2015  s/Mark A. Goldsmith
      Detroit, Michigan  MARK A. GOLDSMITH
      United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 22, 2015.

      s/Carrie Haddon
      Case Manager